James Louis Kohl, Esq., SBN: 120808
795 Folsom Street, First Floor
San Francisco, California 94107
(415)848-2450/ FAX (415)848 2301
jamesk.legal@gmail.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BRUNO, Individually and on behalf of others similarly situated | CASE NO. |
| Plaintiffs, | |
| vs. | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| EQUIFAX INFORMATION SERICES, LLC; GENEVA FINANCIAL SERVICES, LLC; RMB WORLD ENTERPRISES, LLC d/b/a DECISION LINKS; B.B. DIRECT, INC.; GENESIS MARKETING GROUP, INC. d/b/a HITMAN DIRECT; AMERICAN MARKETING AND MAILING SERVICES, INC.; STRATEGIC MARKETING SERVICES, LLC. | 15 United States Code §1681 *et seq*. |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff, Daniel Bruno, on behalf of himself and all others similarly situated (hereinafter "Plaintiff"), files this class action complaint, seeking statutory damages for willful violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*. ("FCRA"), against Equifax Information Services, LLC; Geneva Financial Services, LLC; Genesis Marketing Group, Inc. d/b/a Hitman Direct; American Marketing and Mailing Services, Inc.; RMB World Enterprises; B.B. Direct, Inc.; and Strategic Marketing Services, LLC.  Mr. Bruno brings this lawsuit based upon the illegal sale of his private credit report information for impermissible marketing purposes.[1]

---

[1] Mr. Bruno's allegations are made on personal knowledge as to his experiences and upon information and belief based on the investigation of his counsel as to the other matters.

## I.    PARTIES

1.    Defendant, Equifax Information Services, LLC (hereinafter "Equifax") is a limited liability company doing business in California.  Equifax can be served through its registered agent, The Prentice-Hall Corporation System, d/b/a C.S.C. – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150 N., Sacramento, CA 95833.

2.    Defendant, Geneva Financial Services, Inc. (hereinafter "Geneva") is a corporation incorporated in the State of California. Geneva can be served through its registered agent, legalzoom.com at 10440 Central Avenue, Montclair, CA 91763.

3.    Defendant, RMB World Enterprises, LLC d/b/a Decision Links (hereinafter "RMB") is a data processing service doing business at 401 Congress Avenue, Suite 1540, Austin, TX 78701.   The Registered Agent for service is David Bailey at 1122 Colorado Street, Suite 107, Austin, TX 78701.

4.    Defendant, B.B. Direct, Inc. (hereinafter "B.B. Direct") is a data reseller doing business at 2503 Del Prado Boulevard, Suite 504, Cape Coral, FL 33904. The Registered Agent for service is Brian E. Berg, 1732 Southwest [SW] 44th Street, Cape Coral, FL 33914.

5.    Defendant, Genesis Marketing Group, Inc., dba Hitman Direct, (hereinafter "Genesis") is a marketing agency doing business at 256 North Sam Houston Parkway, Houston, TX 77060. The Registered Agent for service is Lennon C. Wright, 329 West 21st Street. Houston, TX 77008.

6.    Defendant, American Marketing and Mailing Services, Inc. (hereinafter "American") is a marketing agency doing business at 9427 Corporate Lake Drive, Tampa Bay, FL 33634. The Registered Agent for service is Stephen W. Moore, 8240 – 118th Avenue, North, Suite 300, Largo, FL 33773.

7.     Defendant, Strategic Marketing Services, LLC (hereinafter "Strategic") is a marketing agency doing business at 1901 Stanley Gault Parkway, Louisville, KY 40223. The Registered Agent for service is F.B.T., LLC at 400 West Market Street, 32nd Floor, Louisville, KY 40202.

### JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction under 28 U.S.C. §1331, because this action arises under 15 U.S.C. §1681, *et seq*.  This Court also has diversity jurisdiction over this case under 28 U.S.C. §1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, and there are members of the Class who are citizens of a different state from Defendant.

9.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper in this judicial district pursuant to 15 U.S.C. § 1692k(d), in that Defendants transact business in this judicial district and the violations of the FCRA complained of occurred in this judicial district.

### STATUTORY BACKGROUND OF THE FCRA

10.     The FCRA is a comprehensive scheme designed to safeguard the privacy of consumers' credit information. It became effective in 1971 and has been in force since that date.

11.     The FCRA governs the reporting, use, and sale of information bearing on consumers' creditworthiness.  A key component of Congress' oversight is the requirement that consumer reporting agencies ("CRAs") may furnish consumer reports only for the purposes enumerated in the statute ("permissible purpose").  These permissible purposes include, among others, use of the information: (1) to verify the consumer's creditworthiness in connection with a

credit transaction; (2) to verify eligibility for employment; (3) in connection with underwriting of insurance for the consumer; and (4) in connection with a transaction initiated by the consumer; as well as other legitimate business needs for the information. 15 U.S.C. § 1681b(a)(1) – (6).

12.     Under the FCRA, consumers' private information bearing on creditworthiness may not be used without their consent for marketing or promotional purposes other than those specifically enumerated in the FCRA for firm offers of credit.

13.     In order to ensure that CRAs furnish consumer reports only in accordance with section 1681b, Congress established compliance procedures in 15 U.S.C. §1981e. Section 1681e requires CRAs to "maintain reasonable procedures designed to … limit the furnishing of consumer reports to the purposes listed under [§1681b]."

14.     Before providing consumer reports to a new user of consumer reports the CRA must make reasonable efforts to verify the user's identity and to verify that the user has a permissible use for obtaining a consumer report. If a CRA has reasonable grounds to believe a user will not use a report for a permissible purpose, it may not furnish a consumer report.

15.     15 U.S.C. §1681e(e) imposes requirements on persons who procure consumer reports for resale. It requires those persons to certify to the CRA that the end users of the reports are using them for a permissible purpose and also to establish reasonable procedures designed to ensure that the persons to whom they are reselling the consumer reports will use them for a permissible purpose.

16.     15 U.S.C. §1681n imposes statutory damages for any willful violation of the statute.

## IV.  **FACTUAL ALLEGATIONS**

**Equifax's relationship with Geneva**

17.     Upon information and belief, Equifax and Geneva operate under a sales agent agreement whereby Geneva, acting as Equifax's agent, generates lists of consumer credit information provided by Equifax and then sells said information to third party data brokers on Equifax's behalf.

18.     In 2015, Mr. Bruno discovered by visiting Geneva's website that the site is powered by Equifax. (*See* Exhibit A).

**B.  Equifax unlawfully furnished consumer reports to Geneva for impermissible marketing purposes.**

19.     In February 2016, Mr. Bruno received a mailed solicitation from Geneva inviting him to purchase a vehicle at Hanlees Nissan Chevrolet through a prescreened offer of credit between five thousand five hundred dollars ($5,500) and thirty-nine thousand dollars ($39,000). *See* Exhibit B.

20.     After contacting Geneva and filling out an application for a loan, Mr. Bruno requested a copy of his credit report.

21.     Upon reviewing his report, Mr. Bruno discovered that a consumer report containing his personal information had been obtained by "Geneva Financial Services," with the address listed as 10440 Central Ave Ste. B Montclair, CA 91763.

22.     The only business located at 10440 Central Avenue in Montclair, California is a used car dealership, named "Geneva Motors."

23.     In April 2016, upon Mr. Bruno contacting Hanlees Nissan Chevrolet in an attempt to obtain the loan for which he was pre-qualified, a dealership representative advised Mr. Bruno to contact Geneva.

24.     On or about July 20, 2016, Mr. Bruno submitted the loan application to Geneva.

25.     On or about July 27, 2016, Mr. Bruno contacted Geneva to inquire about the status of the loan application.

26.     Geneva did not respond to the loan application until July 29, 2016 when a representative of Geneva personally informed Mr. Bruno that Geneva did not finance vehicles for purchase and instructed him to contact the used car dealership for financing approval.

27.     The offer that Mr. Bruno received was clearly for a vehicle purchase loan.

28.     Upon information and belief, Geneva purchased lists of consumer information from Equifax for the purpose of reselling the information.

29.     Upon information and belief, Equifax allowed Geneva to use the "Geneva Financial Services" name for those entities so the "Geneva Financial Services" name would appear on the reports of those consumers as the entity which made the promotional inquiry for the purpose of a firm offer of credit.

30.     Upon information and belief, Equifax furnished tens of thousands of consumer reports on people throughout the United States to Geneva customers using the "Geneva Financial Services" name to conduct promotional inquiries and make bogus firm offers of credit.

31.     Promotional inquiries are permissible under the FCRA only when the purchaser intends to make a "firm offer of credit or insurance" to consumers. *See* 15. U.S.C. § 1681b(c)(1)(B)(i)

32.     Given that Geneva is not in the business of offering credit of any kind, it cannot make "firm offers of credit or insurance" and has no legitimate right to obtain consumers' credit information without their consent.

33.     Instead, Geneva obtained this information illegally for direct marketing purposes.

34.     A cursory search will show that Geneva is not properly licensed as a lender in all the states in which it does business.

35.     Geneva solicited customers with bogus firm offers of credit to consumers in many states including, but not limited to, Tennessee, Florida, Texas, California, and Delaware *See* Exhibit C.

36.     A cursory search will that show that Geneva lacks the required authority to do business in many states where it does business.

**C. Equifax and Geneva failed to use reasonable procedures to ensure consumers' reports were sold only for permissible purposes.**

37.     Equifax is one of the three largest credit reporting agencies in the United States.

38.     Equifax "organizes, assimilates and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide." *See* Equifax website at http://www.equifax.com/about-equifax/company-profile.

39.     Geneva describes itself as "good in 47 states", an "online portal where your dealers can enter the application" and a company that will "work with the lender to pick the criteria for the mailer." *See* Exhibit A.

40.     Even the most cursory investigation by Equifax into Geneva's website reveals that it is "an auto dealer website." *See* Exhibit A.

41.     Geneva's website is designed by Auto Revolution, a company that only creates auto dealer websites. *See* http://www.autodealerwebsites.com/website-samples.

42.     Even the most cursory investigation by Equifax into Geneva's website reveals that Geneva intends to use consumer credit information for impermissible purposes such as selling this information to other companies who falsely certify having a permissible purpose.

43.     The companies lacking a permissible purpose to which Geneva sells information on consumers include, but are not limited to, marketing agencies, data processers and data resellers such as Defendants RMB, B.B. Direct Inc., Genesis, American and Strategic.

44.     The reports sold by Geneva and Equifax are "consumer reports" as defined by the FCRA because they include information bearing on the creditworthiness, including, in addition to basic contact information, debt loads and FICO scores.

45.     At its' customers' request, Geneva can screen the lists to provide information on, for example, a consumer's payment history and the number of credit relationships that an individual consumer has.

46.     On information and belief, Equifax does not follow reasonable procedures to ensure that the information it sells to Geneva is used only for FCRA permissible purposes.

47.     Even a cursory investigation by Equifax would reveal that Geneva was not incorporated to do business in California until on or about September 10, 2015.

48.     Upon information and belief, Equifax provided over 100,000 consumer credit reports to Geneva prior to the September 10, 2015 date of its incorporation.

49.     In so doing, Equifax failed to comply with its own Application for Membership, namely the Company Information and Onsite Property Observation sections. *See* Application for Service, *available at* http://www.e-cbi.com/pdf_forms/cbc_package3_for_equifax.pdf [2]

50.     Equifax and Geneva illegally released Mr. Bruno's, and others' similarly situated, information in consumer reports to other people causing him embarrassment and anxiety.

---

[2] Note that an onsite property observation of the company must be conducted prior to the applicant's account being established.  Any property observation conducted by or on behalf of Equifax would have shown that Geneva's onsite property was actually a used car dealership, Geneva Motors, confirming Equifax's failure to follow reasonable procedures.

51.     As a direct and proximate cause of Equifax's failure to use reasonable procedures to ensure his information would not be used for impermissible purposes, Mr. Bruno has suffered an unwarranted invasion of his privacy, which may expose him to additional improper uses of the consumer report or his personal identification information.

52.     Equifax has illegally furnished thousands of consumer reports to Geneva under false pretenses to entities which have used them for impermissible purposes such as direct marketing campaigns and reselling consumer information.

53.     Defendant RMB obtained hundreds of thousands of reports from Geneva under these same false pretenses and illegally used these consumer reports to solicit business from thousands of consumers.

54.     Defendant B.B. Direct obtained hundreds of thousands of reports from Geneva under these same false pretenses and illegally used these consumer reports to solicit business from thousands of consumers.

55.     Defendant Genesis obtained hundreds of thousands of reports from Geneva under these same false pretenses and illegally used these consumer reports to solicit business from thousands of consumers.

56.     Defendant American obtained hundreds of thousands of reports from Geneva under these same false pretenses and illegally used these consumer reports to solicit business from thousands of consumers.

57.     Defendant Strategic obtained hundreds of thousands of reports from Geneva under these same false pretenses and illegally used these consumer reports to solicit business from thousands of consumers.

**D.  Equifax acted willfully.**

58.     Equifax is one of the largest CRAs in the United States.

59.     As a nationwide CRA, at the time it provided consumer reports to entities with impermissible purposes Equifax was well aware that it was subject to the mandates and requirements of the FCRA prohibiting the same, and knew or should have known that doing so violated the FCRA.

60.     Equifax has available substantial written materials that apprise it of its duty under the FCRA not to allow access to consumer reports by those without permissible purposes.

61.     Despite its knowledge of these legal duties, Equifax acted consciously in breaching its known duties and depriving Mr. Bruno and the Class members of their rights under the FCRA.

62.     Equifax knew or should have known that the FCRA requires consumer reporting agencies such as Equifax to "maintain reasonable procedures designed to avoid violations of …[§1681b] of [the FCRA]" and to ensure those procedures "require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose" under 15 U.S.C. §1681e(a).

63.     Equifax knew or should have known that it was required, under 15 U.S.C. §1681e(a), (1), to "make reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report," and (2) not to furnish a consumer report to any person if it had "reasonable grounds for believing that the consumer report will not be used" for a permissible purpose.

64.     Equifax also knew or should have known that it was required, under 15 U.S.C. §1681g, to disclose the identity of all persons who had procured a consumer report for any purpose within the year preceding the consumer's request.

65.     Equifax should have easily discovered, with minimal time and effort, that Geneva was not using the consumer reports that Equifax generated and sold to Geneva for any FCRA permissible purpose.

66.     Mr. Bruno is informed and believes that the business relationship manager at Equifax, Oliver Markham Healey, was once an equity partner in Direct Lending Source.

67.     Direct Lending Source and Equifax formerly had a business relationship that resulted in Equifax being sanctioned in a Decision and Order issued by the Federal Trade Commission ("FTC") for consumer credit information processes and practices which are parallel and similar to the practices and processes which Plaintiff has alleged herein. *See* Exhibit D.

68.     Upon information and belief, said practices and process which the FTC found to be in violation of the FCRA are very similar to the practices and processes which Mr. Bruno alleged herein as violations of the FCRA.

69.     Equifax acted willfully in concealing from consumers that it delivered consumer reports to resellers like Geneva for resale, rather than identifying those resellers in enquiry logs which the FCRA requires that Equifax prepare and deliver to consumers who request copies of their consumer credit file under 15 U.S.C. §1681g(a)(3).

70.     Geneva also acted willfully by failing to ensure that consumer reports are not used for impermissible purposes.

71.     Geneva acted willfully by failing to disclose to Equifax both the identity of the end users of the reports and the supposed permissible purposes for which the reports were to be used.

72.     Geneva, through the exercise of reasonable procedures including minimal diligence on its customers, should have discovered that RMB, B.B. Direct, Genesis, American and Strategic had no permissible purpose for consumer reports.

73.     Defendant RMB also acted willfully by intentionally making false representations to Geneva regarding their purpose in purchasing consumer reports.

74.     Defendant B.B. Direct also acted willfully by intentionally making false representations to Geneva regarding their purpose in purchasing consumer reports.

75.     Defendant Genesis also acted willfully by intentionally making false representations to Geneva regarding their purpose in purchasing consumer reports.

76.     Defendant American also acted willfully by intentionally making false representations to Geneva regarding their purpose in purchasing consumer reports.

77.     Defendant Strategic also acted willfully by intentionally making false representations to Geneva regarding their purpose in purchasing consumer reports.

78.     The conduct of Defendants has been the producing and proximate cause of past, present and future mental distress and emotional anguish stemming from the ongoing invasion of Mr. Bruno's and similarly situated individuals' privacy and other damages that will be presented to the jury.

79.     Mr. Bruno justifiably fears that, absent this Court's intervention, Defendants will continue to unlawfully access his personal, private and financial information and cause harm to his credit or otherwise harm him economically.

80.     As a result of these FCRA violations, Defendants are liable to Mr. Bruno and similarly situated individuals for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2), as well as attorneys' fees and costs pursuant to 15 U.S.C. §1681n and §1681o.

## V. CLASS ALLEGATIONS

81.     Mr. Bruno brings this action on behalf of himself and a Class of persons similarly situated under Rule 23, for the following "Geneva Class":

> All natural persons within the United States (including all territories and other political subdivisions of the United States) who are identified in Equifax's records as having been the subject of consumer reports obtained by Geneva or their affiliates within the five (5) years preceding the filing of this action.

Excluded from the class definition are any employees, officers or directors of any of the Defendants, any attorneys appearing in this case and any judges assigned to hear this case as well as their immediate family and staff.

In addition, Mr. Bruno brings this action on behalf of himself and a Class of persons similarly situated under Rule 23, for the following "Marketing Defendants Class":

> All natural persons within the United States (including all territories and other political subdivisions of the United States) who are identified in Geneva's records as having been the subject of consumer reports requested through Geneva the five (5) years preceding the filing of this action.

Excluded from the class definition are any employees, officers or directors of any of the Defendants, any attorneys appearing in this case and any judges assigned to hear this case as well as their immediate family and staff.

In addition, Mr. Bruno brings this action on behalf of himself and a Class of persons similarly situated under Rule 23, for the following "Equifax Class":

> All natural persons within the United States (including all territories and other political subdivisions of the United States) who are the subject of consumer reports furnished by Equifax within five years preceding the filing of this action and whose reports were (1) sold to Geneva and/or its affiliates or agents; (2) contained the notation "PRM" or were otherwise intended for promotional purposes; (3) sold to end users, including but not limited to the named Defendants herein for which (i) Equifax had no reasonable grounds for believing the end users would use the reports for a permissible purpose or (ii) Equifax would have discovered, through the establishment and implementation of reasonable procedures, that the end users did not intend to extend a firm offer of credit or insurance to the targeted consumers.

Excluded from the class definition are any employees, officers or directors of any of the Defendants, any attorneys appearing in this case and any judges assigned to hear this case as well as their immediate family and staff.

82.     **Numerosity**.  The Class members are so numerous that joinder of all is impractical under Fed. R. Civ. P. 23(a)(1).   Equifax sold, and Geneva acquired, accessed and used the consumer reports of thousands of individuals, and it would not be practical for all of these injured parties to bring suit individually.  Class members may be notified of this action by first-class mail, supplemented, if the Court deems advisable, by published notice.

83.     **Existence and Predominance of Common Questions**.  Common questions of law and fact exist as to all Class members and predominate over any individual questions under Fed. R. Civ. P. 23(a)(2) and 23(b)(3).  These common questions include whether:

a)   Geneva had a permissible purpose for consumer reports (as to all Classes);

b)     Geneva, RMB, B.B. Direct Inc., Genesis, American, and Strategic each falsely certified a permissible purpose in accessing and using Class members' consumer reports (as to both classes);

c)     Equifax did not have reasonable grounds for believing end users of consumer reports it furnished for promotional purposes would use those reports to extend a firm offer of credit or insurance (as to the Equifax class);

d)     Equifax should have discovered, through the establishment and implementation of reasonable procedures, that end users of consumer reports it furnished for promotional purposes did not intend to use those reports to extend a firm offer of credit or insurance (as to the Equifax class);

e)      Equifax should have discovered, through the establishment and implementation of reasonable procedures, that Geneva had no permissible purpose (as to the Equifax class);

f)      Geneva acted as Equifax's agent in selling and/or reselling consumer reports (as to all Classes);

g)      Equifax implemented and maintained reasonable procedures to limit the provision of Class members' consumer reports to purchasers with a permissible purpose (as to the Equifax class);

h)      RMB, B.B. Direct Inc., Genesis, American, and Strategic had a permissible purpose for consumer reports (as to the Geneva Class); and

i)      Defendants' conduct was willful (as to all Classes).

84.     **Typicality**.  Mr. Bruno's claims are typical of the claims of the Class members under Fed. R. Civ. P. 23(a)(3) because all Class members, like Mr. Bruno, had their personal information unlawfully accessed without any FCRA permissible purpose.  All Equifax Class members, like Mr. Bruno, had their right to know the identities of persons who had procured copies of their consumer reports violated.  Mr. Bruno has suffered similar injuries to those of the members of the Classes he seeks to represent.  Mr. Bruno bases his claims, and those on behalf of the Classes, upon the same legal and remedial theories and is entitled to relief under the same causes of action and upon the same facts as the other Class members.

85.     **Adequacy**.  Mr. Bruno is an adequate Class representative under Fed. R. Civ. P. 23(a)(4) because he will fairly and adequately protect the interests of all Class members in the prosecution of this action and in the administration of all matters relating to the claims in this case. Mr. Bruno has retained counsel experienced in handling FCRA class action suits.  Neither Mr.

Bruno nor his counsel have any interest which might cause them not to vigorously pursue this action.

86. **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3) because liability will be determined based on common facts and legal theories, and the damages sought are such that individual prosecution would prove burdensome and expensive for the litigants and the courts. Because of the complex and extensive litigation necessitated by Defendants' conduct, it would be virtually impossible for the Class members individually to effectively redress the wrongs done to them.  In addition, individual litigation would present a potential for inconsistent or contradictory judgments and increase the delay and expense to the parties and the court system.  By contrast, the class action procedure will result in substantial benefits to the parties and the Court by allowing the Court to resolve numerous individual claims based on a single set of proof.

87. **Injunctive Relief**.  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, making equitable or declaratory relief appropriate.

**CAUSES OF ACTION**

**COUNT I – VIOLATIONS OF 15 U.S.C. §§ 1681b, 1681e(a)**

*As to Defendants Equifax and Geneva – on behalf of all Classes*

88. Mr. Bruno incorporates by reference all preceding paragraphs as though fully stated here.

89. Equifax sold the consumer reports of Mr. Bruno and the other Class members to Geneva in violation of the FCRA, 15 U.S.C. §§ 1681b, 1681e(a).

90.     Geneva, acting as Equifax's agent, sold the consumer reports of Mr. Bruno and the other Class members to RMB, B.B. Direct Inc., Genesis, American and Strategic in violation of the FCRA, 15 U.S.C. §§ 1681b, 1681e(a).

91.     In requesting, obtaining and allowing access to Mr. Bruno's and other Class members' credit information with actual knowledge that the users of the information did not have a permissible purpose for the same, Geneva and Equifax willfully violated the FCRA for each such inquiry they made and allowed.

92.     Equifax and Geneva knew or should have known that the prospective use of reports by others was not for a permissible purpose under §1681b.

93.     As described above, even the most cursory investigation would have revealed this, and Equifax thus had reasonable grounds for believing the consumer reports would not be used for permissible purposes under §1681b.

94.     Equifax and Geneva failed to implement and maintain reasonable procedures to limit the provision of the consumer reports of Mr. Bruno and the Class members to a section 1681b permissible purpose.

95.     On information and belief, Geneva was a "new prospective user" of consumer reports, and Equifax failed to make a reasonable effort to verify its identity and the uses of the consumer reports by Geneva prior to furnishing the consumer reports of Mr. Bruno and the Class members to Geneva.

96.     Equifax sold the consumer reports to Geneva, who it knew or in the exercise of reasonable diligence should have known, would resell the reports for purposes not permitted by the FCRA.

97.     Equifax and Geneva willfully and recklessly disregarded its duties under 15. U.S.C. §§ 1681b, 1681e(a) to prevent misappropriation and misuse of the private and protected credit information of Mr. Bruno and the Class members.

98.     Equifax's sale of the consumer reports described herein carried an unjustifiably high risk of harm that was either known or so obvious that it should have been known, and even a minimal level of diligence would have discovered that the lists were not being used for a permissible purpose.

99.     Equifax's and Geneva's failures resulted in the unlawful use of Mr. Bruno's and Class members' credit information for impermissible purposes such as bogus firm offers of credit and other impermissible marketing purposes.

100.    As a direct and proximate result of the violations of the FCRA by Geneva and Equifax, Mr. Bruno and the Class members have suffered and will continue to suffer considerable harm and injury including, but not limited to, mental distress and emotional anguish stemming from the ongoing invasion of their privacy, entitling Plaintiffs to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action, pursuant to 15 U.S.C. §§ 1681n and o.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1681e(e)

*As to Defendant Geneva – on behalf of all Classes*

101.    Mr. Bruno incorporates by reference all preceding paragraphs as though fully stated here.

102.    Geneva is liable as a "person who procures a consumer report for purposes of reselling the report or any information in the report" under 15 U.S.C. §1681e(e).

103.   Geneva procured the consumer reports of Mr. Bruno and the other Class members from Equifax for the purpose of reselling those reports and information in them, and it did resell those reports and information in them to others.

104.   On information and belief, Geneva did not disclose to Equifax either the identity of the end users of the reports and/or information, nor did it disclose a permissible purpose for using the reports under §1681b.

105.   No permissible purpose could be disclosed to Equifax because Geneva was not capable of making firm offers of credit.

106.   As a person who procures consumer reports for purposes of reselling the reports or information contained therein, Geneva had an obligation to establish and comply with reasonable procedures designed to ensure that the reports and information were resold for a permissible purpose under §1681b, but Geneva failed to do so.

107.   Geneva willfully and recklessly disregarded its duties under 15 U.S.C. §1681e(e) to prevent misappropriation and misuse of the private and protected credit information of Mr. Bruno and the Class members.

108.   Geneva is liable to Mr. Bruno and the Class members for statutory damages, punitive damages and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

**COUNT III – VIOLATIONS OF 15 U.S.C. §1681b(f)**

*As to Defendant Geneva – on behalf of all Classes*

109.   Mr. Bruno incorporates by reference all preceding paragraphs as though fully stated here.

110.   Geneva entered into an agreement whereby it purchased from Equifax consumer reports containing the personal information of Mr. Bruno and the other Class members.

111.   15 U.S.C. §1681b(f) prohibits persons from using or obtaining consumer reports in the absence of a permissible purpose.

112.   The only permissible purpose for using consumer reports like those obtained by Geneva regarding consumers, such as Mr. Bruno and the other Class members, with whom they have no business relationship is to make a "firm offer of credit or insurance." *See* 15. U.S.C. §1681b(c)(1)(B)(i).

113.   A "firm offer" is one that will be honored (subject to certain expectations) if the consumer continues to meet the pre-selected criteria used to select them for the offer. *Id.*

114.   Geneva is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

115.   Geneva willfully and recklessly disregarded its duties under 15 U.S.C. §1681(b)(f) to obtain a consumer report only for a permissible purpose.

116.   Geneva's failures resulted in the unlawful use of consumers' credit information for impermissible purposes such as bogus firm offers of credit and other impermissible marketing purposes.

117.   Geneva is liable to Mr. Bruno and the Class members for statutory damages, punitive damages and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

## COUNT IV – VIOLATIONS OF 15 U.S.C. §1681q

*As to Defendant Geneva – on behalf of all Classes*

118.   Mr. Bruno incorporates by reference all preceding paragraphs as though fully stated here.

119.   Geneva used the consumer reports of Mr. Bruno and the Class members under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

120.    Mr. Bruno and the Class members have had their privacy invaded and credit status placed in jeopardy as a result of Geneva's use of their credit information in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

121.    Mr. Bruno and the Class members were injured by this invasion of privacy and suffered damages as a result.

122.    Geneva is liable to Mr. Bruno and the Class members for statutory damages, punitive damages and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

## COUNT V – VIOLATIONS OF 15 U.S.C. §1681b(f)

*As to Defendants RMB, B.B. Direct Inc., Genesis, American, and Strategic on behalf of the Geneva Class*

123.    Mr. Bruno incorporates by reference all preceding paragraphs as though fully stated here.

124.    Upon information and belief, Defendants RMB, B.B. Direct Inc., Genesis, American, and Strategic (hereinafter, collectively, "Marketing Defendants" and individually, "Marketing Defendant") each entered into an agreement whereby they purchased from Geneva consumer reports containing the personal information of Mr. Bruno and the other Class members.

125.    15 U.S.C. §1681b(f) prohibits persons from using or obtaining consumer reports in the absence of a permissible purpose.

126.    Upon information and belief, the Marketing Defendants are not in the business of making firm offers of credit or insurance and have no intention to make any such firm offer.

127.    Each Marketing Defendant willfully and recklessly disregard their duties under 15 U.S.C. §1681(b)(f) to obtain a consumer report only for a permissible purpose.

128.    Each Marketing Defendant's violation of 15 U.S.C. §168(b)(f) has resulted in the unlawful use of consumers' credit information for impermissible purposes such as bogus firm offers of credit and other impermissible marketing purposes.

129.    Each Marketing Defendant is liable to Mr. Bruno and the Class members for statutory damages, punitive damages and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

## COUNT VI – VIOLATIONS OF 15 U.S.C. §1681q

*As to Defendants RMB, B.B. Direct Inc., Genesis, American, and Strategic on behalf of the Geneva Class*

130.    Mr. Bruno incorporates by reference all preceding paragraphs as though fully stated here.

131.    Each Marketing Defendant used the consumer reports of Mr. Bruno and the Class members under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

132.    Mr. Bruno and the Class members have had their privacy invaded and credit status placed in jeopardy as a result of each Marketing Defendant's violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

133.    Mr. Bruno and the Class members were injured by this invasion of privacy and suffered damages as a result.

## VI.  **PRAYER**

Mr. Bruno, on his own behalf and on behalf of the Class, prays for relief against Defendants including:

a)   An order certifying the Classes under Fed. R. Civ. P. 23 and appointing Mr. Bruno and his counsel to represent the Classes;

b)  Statutory damages under 15 U.S.C. §1681n;

c)  Punitive damages;

d)  Pre-judgment interest from the date of filing this lawsuit;

e)  Reasonable attorneys' fees pursuant to 15 U.S.C. §1681n and §1681o;

f)  Costs of this proceeding;

g)   Equitable and declaratory relief; and

h)  All other relief to which Mr. Bruno and the Class members may be justly entitled.

## VII.  <u>JURY DEMAND</u>

Mr. Bruno demands a trial by jury.


Dated: February 14, 2017                    Respectfully submitted,

                                            By:  <u>/s/ James Louis Kohl, Esq.</u>
                                            James Louis Kohl, Esq., SBN: 120808
                                            795 Folsom Street, First Floor
                                            San Francisco, California 94107
                                            (415)848-2450/ FAX (415)848 2301
                                            jamesk.legal@gmail.com
                                            Attorney for Plaintiffs