UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BRUNO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, et al.,<br><br>　　　　Defendants. | No. 2:17-cv-327-WBS-EFB<br><br><br>ORDER RE IN CAMERA REVIEW |

This case was before the court on July 11, 2018, for hearing on plaintiff's motion to compel defendant Equifax Information Services, LLC ("Equifax") to produce documents responsive to plaintiff's First Requests for Production of Documents that were withheld on the basis of privilege. ECF No. 196. Attorney Joseph Messer appeared on behalf of plaintiff. Attorneys Zachary McEntyre, Andrew Walcoff, and Matthew Dawson appeared on behalf of defendant Equifax. Because the motion could not be resolved on the parties' joint statement (*see* E.D. Cal. L.R. 251) and the arguments presented at the hearing, Equifax was ordered to submit the withheld documents for *in camera* review. It was also directed to submit supporting declarations explaining the basis for each assertion of the privilege and to serve plaintiff with a

/////

/////

1

copy of each submitted declaration.[1] ECF No. 213 at 2. Equifax has since complied with that order, and plaintiff has submitted a response to Equifax's the declarations. ECF No. 221. After careful review of the documents and the parties' submissions, the court grants in part and denies in part plaintiff's motion to compel for the reasons detailed below.

I. Relevant Background

This putative class action proceeds on plaintiff's second amended complaint. ECF No. 132. Plaintiff asserts claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") against defendants Equifax; Geneva Financial Services, Inc. ("Geneva Inc.") and its officers Mark Hassan and John McGinley; Geneva Motors, Inc. d/b/a Geneva Financial Services ("Geneva Motors") and its president and CEO, Kamies Elhouty; REBS Supply Inc. d/b/a REBS Marketing, Inc. ("REBS") and its CEO, Andy Mitchell; and Robert McGinley. The crux of plaintiff's complaint is that Equifax improperly furnished his and proposed class members' credit information to the other defendants, who did not have a permissible purpose for obtaining such information.[2]

In response to plaintiff's First Request for Production of Documents, Equifax produced numerous documents on a rolling basis. Equifax also withheld 247 responsive documents it claims are protected by the attorney-client privilege and served plaintiff with two separate privilege logs.[3] Plaintiff has moved to compel the production of those documents, arguing that

---

[1] Equifax was instructed to redact from the declarations served on plaintiff any privileged information that needed to be disclosed to the court in order to explain each assertion of the attorney-client privilege.

[2] Section 1681e provides that a person may not obtain a consumer credit report except for one under the permissible purposes delineated in section 1681b of the FCRA. Further, "[a] credit reporting agency may be liable for its subscriber's violation when the agency fails to comply with the statutory obligations imposed by 15 U.S.C. § 1681e." *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010).

[3] Equifax's privilege logs also designated several documents as attorney work product. ECF No. 203-1 at 15, ECF No. 203-2 at 2. However, in the parties' joint statement Equifax does not argue that any of the documents are not discoverable under the work product doctrine. Nor do any of its declarations make that contention. Thus, it appears Equifax no longer seeks protection from disclosure under that doctrine.

2

Equifax has wrongfully withheld four categories of documents that are not covered by the attorney-client privilege: (1) employee-to-employee communications; (2) communications sent to Equifax client services mailboxes; (3) Equifax employee statements that were not transmitted to an individual; and (4) communications between Equifax employees and third-parties. ECF No. 203 at 5-17. Additionally, in his response to Equifax's supporting declarations, plaintiff argues that Equifax has implicitly waived the privilege through statements made in this litigation.[4] ECF No. 221 at 4.

II. Discussion

    A. Implied Waiver

Plaintiff argues that even if the withheld documents contain privileged communications, Equifax has waived its attorney-client privilege by putting the advice from its in-house counsel at issue in this case. ECF No. 221 at 2-4.

"Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 947 F.2d 1156, 1162 (9th Cir. 1992). An implied waiver occurs where: "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposition party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F. 3d. 1322, 1326 (9th Cir. 1995). In assessing whether a waiver has occurred, "an overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Id*.

Plaintiff first argues that Equifax implicitly waived its privilege by asserting its First Affirmative Defense, ECF No. 221 at 3, which asserts that plaintiff's "Second Amended Complaint is barred by the fault of other persons or entities and Plaintiff's damages, if any, should be apportioned according to the principles of comparative fault." ECF No. 145 at 26.

---

[4] Equifax moved to strike the waiver argument raised in plaintiff's response to its declarations or, alternatively, for leave to file a response to plaintiff's arguments. ECF No. 226. That motion was denied, but Equifax was granted leave to submit a response to address the argument. ECF No. 248.

3

Equifax clarified in response to interrogatories that the entity referred to in its First Affirmative Defense is third-party Datamyx, LLC ("Datamyx"). ECF No. 221 at 3 n.2. Plaintiff concludes from this that Equifax's First Affirmative Defense is "grounded in its belief that its actions were legal and Datamyx's were not, [which] puts Equifax's knowledge on the law and the basis for its understanding of what the law requires in issue." ECF No. 221. Plaintiff also contends that conversations Equifax employees had with counsel, as well as their conversations with Datamyx, "regarding the legality of their actions are directly relevant in determining the extent of Equifax's knowledge and, as a result, its intent." *Id*.

Plaintiff's argument is unpersuasive. Equifax's affirmative defense does not rely on attorney-client communications or otherwise place advice from counsel at issue. Instead, it merely asserts that Equifax's is not liable to plaintiff due to the acts of another party. That position does not place attorney-client communications at issue or otherwise provide a basis for finding a waiver. *See Valenzuela v. Union Pacific R.R. Co.*, 2016 WL 7385037, at *4 (D. Ariz. Dec. 21, 2016) (observing that a privilege holder cannot rely on advice of counsel as a defense "while simultaneously shielding that advice from disclosure. But if the privilege holder merely asserts that his conduct was lawful and makes no claim that he or she relied on counsel's advice, privilege information is not necessarily placed in issue.") (citing *Pennzoil Co.*, 974 F.2d at 1163); *Holman v. Experian Info. Solutions*, 2012 WL 2501085, at *5 (N.D. Cal June 27, 2012) (holding, in a case alleging the defendant violated the FCRA, that "mere denial of willfulness does not [a]ffect an implied waiver of its attorney-client privilege.").

Plaintiff's contention that attorney-client communications are relevant to determining Equifax's knowledge and intent is also immaterial to the present inquiry—i.e., whether Equifax waived the privilege by affirmatively placing privileged communications at issue. While attorney-client communications may be highly relevant to plaintiff's claims for violation of the FCRA, absent a waiver plaintiff is not entitled to discovery containing such communications. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense . . . .) (emphasis added).

/////

4

Plaintiff also argues that Equifax has waived the privilege by "repeatedly emphasiz[ing] that it had a reasonable belief, based on its policies and procedures, that Geneva had a permissible purpose to obtain Plaintiff's information." ECF No. 221 at 3 (relying on ECF No. 71 at 3 & ECF No. 154 at 4). Plaintiff further contends that "Equifax has affirmatively placed attorney-client communications at issue by asserting a good faith belief that its conduct was lawful—i.e., that it had a reasonable belief, based on its policies and procedures, that Geneva had a permissible purpose to obtain Plaintiff's information." *Id*. Inherent in plaintiff's argument is an acknowledgment that Equifax is relying on its policies and procedures, not advice of counsel, for its reasonable belief that it was acting lawful. More significantly, Equifax's contention that its acts were lawful because it had a reasonable belief that Geneva Financial Services had a permissible purpose to obtain plaintiff's credit information does inject a new issue into this litigation. Rather, that position is nothing more than a denial of one element of plaintiff's claims. *See Clafey v. River Oaks Hyundai*, 486 F. Supp. 2d 776, 778 (N.D. Ill. 2007) ("[Defendant] has not waived the privilege . . . merely by asserting that it did not willfully violate the statute. Among other reasons, willfulness is not a 'defense'—even though [defendant] incorrectly pled it as such. Rather, it is part of what a plaintiff has to prove to recover damages."); *see also Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010) (a credit reporting agency violates 15 U.S.C. § 1681e if it furnishes credit reports when there are reasonable grounds to believe the reports will be used impermissibly); *Thao Pham v. Solace Financial, LLC*, No. 12-C-02413 RMW, 2012 WL 5471160, *2 (N.D. Cal. Nov. 9, 2012) (plaintiff bears the burden of proving that credit report was obtained without a permissible purpose). Thus, there is no basis for finding that Equifax has implicitly waived the attorney-client privilege.

B. <u>Documents Not Addressed in Equifax's Declarations</u>

Plaintiff also argues that Equifax's supporting declarations fail to address its withholding or redacting of certain documents it was ordered to submit for *in camera* review.[5] ECF No. 221.

---

[5] Specifically, plaintiff claims that Equifax's declarations fail to address documents he identifies as: EIS-BRUNO-P-000015, 000037, 402572, 454748-53, 454758-61, 455611-16, 456456-61, 457315-17, and 457322-26. ECF No. 221 at 4.

5

Accordingly, plaintiff contends that Equifax should be required to produce the documents it failed to address.

The first three documents, identified by plaintiff as EIS-BRUNO-P-000015, 00037, and 402572, each consist of the second page to three separate documents. *See* 203-1 at 13, 16 (April privilege log); ECF No. 203-2 at 3 (May privilege log). Martha Dunn, the former Senior Vice President of Credit Marketing Services for Equifax, addresses each of these documents in her declaration, although she only identifies them by the bates number assigned to the first page of each document. Dec. of Martha Dunn ("Dunn. Decl.") ¶ 3. As for the documents plaintiff identifies as EIS-BRUNO-P 454748-53, 454758-61, 455611-16, and 456456-61, Equifax's *in camera* submission states that it has withdrawn its assertion of the privilege for these documents.[6]

The remaining two documents—identified as EIS-BRUNO 457315-17 and 457322-26— are both listed in Equifax's May 2018 privilege log (ECF No. 203-2 at 22, 23), but neither are addressed by any of the declarations Equifax submitted. Both documents are dated February 9, 2017, and authored by Equifax employee Doria Langenkamp. *Id*. Neither document had a recipient, and each are described as a "confidential document by Equifax management containing information to facilitate the rendition of legal advice regarding contractual agreements with customers and/or vendors." ECF No. 203-2 at 22-23. That vague description is insufficient to establish that these documents contain confidential communications made for purpose of rendering legal advice. Equifax has not provided any further explanation for its contention that these documents are privileged and, accordingly, it has failed to satisfy its burden and must produce the documents. *See United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (asserting party bears the demonstrating that the information is privileged).

C.   *In Camera* Review

As discussed above, plaintiff contends that Equifax has impermissibly withheld numerous documents that fall into the following four categories: (a) employee-to-employee communications; (b) communications from employees sent to an Equifax Mailbox; (c) statements

---

[6] In light of that representation, Equifax shall, if it has not already done so, produce these documents forthwith.

6

authored by employees or counsel but not communicated to another person; and (d) communications between Equifax employees and third-parties. ECF No. 203 at 5-17. Equifax has submitted the documents for each category that it continues to maintain are privileged, with each category of documents separated into different volumes. Volumes A and C each consist of two large binders, and volumes B and D are each limited to one small binder. As explained below, many of the documents are insulated from disclosure by attorney-client privilege, but Equifax has failed to satisfy its burden of demonstrating that *all* of the documents contained privileged communications.

1. Relevant Legal Standards

"In federal question cases, federal privilege law applies." *N.L.R.B. v. North Bay Plumbing, Inc.*, 102 F.3d 1005 (9th Cir. 1996) (citing Fed. R. Evid. 501). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). It "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. The "party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication," and "if necessary, to segregate the privileged information from the non-privileged information." *Ruehle*, 583 F.3d at 607, 609 (emphasis in original). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*. at 607. The attorney-client privilege exists:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). The party asserting the privileged bears the burden of establishing each element. *Id*. at 608.

In *Upjohn*, the Supreme Court addressed the application of the attorney client privilege in the context of a corporate client. The Supreme Court "held that the privilege applies to

communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Admiral Ins. Co. v. U.S. Dist. Court. For Dist. of Az.*, 881 F.2d 1486, 1492 (9th Cir. 1989) (citing *Upjohn*, 449 U.S. at 394); *see also United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice."). Under this framework, courts have held that the privilege may apply to "a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel," as well as "an employee [communication regarding] her intent to seek legal advice about a particular issue." *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *see In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL2585038, at *3 (N.D. Cal. Aug. 30, 2006) ("[W]here the specific purpose of the document is to seek legal advice and the document is sent to nonlegal business staff for the purpose of informing them that legal advice has been sought or obtained, the attorney-client privilege obtains even though the document was provided to nonlegal personnel.") (internal quotations omitted); *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege.").

2. Employee-to Employee Communications

Plaintiff argues that Equifax has improperly withheld or redacted several employee-to-employee communications that are not covered by the attorney-client privilege. ECF No. 203 at 5. He contends that these communications, which were made between non-attorney Equifax employees, do not relate to legal advice because there is no indication that they were made on behalf, or at the behest of, an attorney. *Id*. at 6-7. He further argues that it is evident from the content surrounding redacted communications that the employee-to-employee communications were made for a business purpose, not for obtaining legal advice. *Id*. at 7-9. Equifax counters that plaintiff's argument is premised on the flawed assumption that one can determine whether

the withheld communication contains protected statements based on the surrounding communications. *Id*. at 17-18. Relying on the Supreme Court's decision in *Upjohn*, Equifax argues that the withheld or redacted documents in this category are privilege notwithstanding the fact that they were sent between non-attorneys because each communication was made in connection with obtaining or providing legal services. *Id*. at 17-19.

This category of documents consists of 68 documents. *See* Binder A Index Privilege Log. Documents 1 through 57 of Volume A[7] consist of various emails, as well as two email attachments, sent between various Equifax employees, some of which are members of Equifax's in-house counsel. Upon thorough review of each of these emails, it is evident that many, but not all, of these email communications are privileged.

Document 1 is an email relating to a request for legal advice from attorney Doug Sperry, in-house counsel for Equifax. Accordingly, the email is privileged. Document 2 and 3 contain a series of communications from the same email chain. These emails primarily consist of privileged communications made for the purpose of obtaining legal advice. However, the earliest email in both documents is from Jack Bourlas, a Datamyx employee, concerning business dealings between Equifax and Datamyx. While the other communications in these documents are privileged, the email from Jack Bourlas is not and must be produced.

Documents 4-8, 9-10 and 20-24, and 11-17, are three separate email chains, all containing internal communications made for the purpose of securing legal advice and, therefore, are privileged. Documents 18-19 and 25-29 contain a series of related emails, the vast majority constituting attorney-client communications. However, Equifax has not shown that the most recently sent email in document 18 and the two most recently sent emails in document 27 contain communications made for the purpose of facilitating legal advice. Instead, these emails, which are between two non-attorney employees, pertain to a purely business matter. Accordingly, these three emails must be produced, but the remaining emails may be redacted.

/////

---

[7] Unless specified differently, all documents discussed in this section are identified by the number assigned by Equifax's Binder A Index Privilege Log.

As for documents 30-37, Equifax produced these documents but with redactions. Documents 30-36 are related emails, and the redacted portions contain privilege communications made for the purpose of obtaining legal advice. The same is true of the one redaction made to documents 37. The court also finds that the emails in documents 38 and 39, which were withheld in their entirety, are protected by the privilege.

Equifax, however, has failed to meet its burden of showing that the email communications in documents 40 and 41 are privileged. Document 40 contains a series of emails related to an internal review of a separate entity with which Equifax does business. None of the emails were drafted by in-house counsel. Although an Equifax attorney was among the eight employees copied, or "cc-ed," on the earlier emails, nothing suggests that these attorneys received the emails to facilitate the rendering of legal advice. The emails do not request legal advice from either of the attorney recipients, nor is there any indication that either attorney responded to the emails. Counsel's mere inclusion among the recipients of the initial emails is not sufficient to afford protection under attorney-client privilege. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013) ("[M]erely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege. Instead, each element of the privilege must be met when the attorney-client privilege is being asserted."); *Chevron Texaco Corp.*, 241 F. Supp. 2d at 1075 ("The mere fact that outside counsel was copied with the e-mail will not shield communications not made for the purpose of securing legal advice."). More significantly, the email chain's seven most recently sent emails are between four non-attorney employees and are each designated for those recipients' "eyes only." That designation demonstrates that these communications were not made for the purpose of obtaining or sharing previously rendered legal advice. As for document 41, it consists of the same series of emails, but with the two most recently sent emails excluded. Accordingly, Equifax has failed to show that documents 40 and 41 are protected by the attorney-client privilege.

As for documents 42 and 58-61, Equifax's *in camera* submission indicates that it has withdrawn its assertion of the privilege for these documents. Accordingly, these documents must be produced, if Equifax has not already done so.

10

Documents 43-57 consist of a series of emails, each related to a legal opinion provided by in-house counsel Doug Sperry concerning a proposed mailer. Documents 43-48 and 52 were withheld, while documents 49-51 and 53-57 were produced with redactions. The withheld documents, and the redacted portions of the produced documents, reflect privileged communications, including Mr. Sperry's advice and employee discussions related to that advice. While these communications would usually be protected from disclosure, the record reflects that Equifax failed to maintain the confidentiality of Mr. Sperry's legal advice. Documents 6 and 7 of Volume D[8] reflect that Mr. Sperry's legal advice regarding the proposed mailer was voluntarily disclosed to a third-party, thereby waiving the privilege for all communications related to that advice. *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosure constitutes a waiver of the attorney-client privilege, however, only as to communications about the matter actually disclosed.") (internal quotations omitted). Accordingly, all communications in documents 43-57 are no longer protected by the attorney-client privileged and must be produced.

The remaining seven documents in this category, documents 62-68, are identified by Equifax's privilege log as email attachments. The documents, which were produced but with more than 30 redactions, consist of hundreds of pages of spreadsheets. Equifax explains that the "redacted portions memorialize either prior communications with Equifax employees and Equifax in-house attorneys regarding compliance with federal or state laws, the intent to engage in such attorney-client communications, or both." Spurlock Decl. ¶ 16.

Equifax's vague and conclusory explanation fails to provide any assistance in determining whether each of the redactions was proper. It does not provide any context for any particular redaction, nor does it explain how the redacted information relates to legal advice concerning compliance with "state and federal laws." This is problematic since it is not obvious from

/////

---

[8] As discussed in greater detail below, Volume D contains emails between Equifax employees and third-parties that are not covered by the attorney-client privilege.

reviewing the documents that all redacted information relates to the seeking or rendering of legal advice.

Having thoroughly reviewed documents 62-68, the court finds that Equifax has failed to make a clear showing that the redacted communications appearing at the pages with the following bates numbers were made for the purpose of obtaining or providing legal advice: EIS-BRUN-404824, 404839, 404847, 404851 (both redactions), 404853, 404855, 442625, 403644, 403649 (both redactions), 403656, 403748, 403778, 453194, 453222 (both redactions), 453458, 339609 (all redactions), and 339921 (both redactions).[9]

Many of the redacted statements are in a vernacular common to the industry (or at least among Equifax employees)—often containing shorthand and/or acronyms that are foreign to the court—with no obvious indication that they pertain to the obtaining or providing of legal advice.[10] Accordingly, it is not clear whether many of the redactions even relate to a legal matter.

Furthermore, many of the redacted statements merely reflect that Equifax's legal department approved a matter or document, or that such approval needed to be obtained. But it is not clear from Equifax's *in camera* submission whether that approval was related to a legal issue, or whether Equifax's in-house counsel were acting in a business capacity.[11]

"The presumption [of privilege] that attaches to communications with outside counsel does not extend to communications with in-house counsel . . . [b]ecause in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors." *Lenz v. Universal Music Corp.*, No. C 07-3783 JF (RS), 2009 WL 3573990 (N.D. Cal. Oct. 30, 2009) (some alteration in original); *see Chevron Texaco Corp.*, 241 F. Supp. 2d at 1077 ("[T]he realities of the corporate structure are such that an in-house attorney may be charged with assessing the legal aspects of a transaction and implementing that transaction. Because, in this

---

[9] As for the remaining redactions, it is apparent from the court's review that each contains privileged information.

[10] *See* EIS-BRUNO-403649, 403656, 403748, 403778, 453222, and 453458.

[11] *See* EIS-BRUNO-404824, 404839, 404847, 404581, 404853, 404855, 442625, 403644, 403649, 403656, 403748, 453194, 453222, 453458, 339609, and 339921.

12

way, in-house counsel operate in both a legal and business capacity . . . an attorney may act as the "attorney for purposes of one communication and as the "client" for purposes of another."). Accordingly, "[w]ith respect to internal communications involving in-house counsel, [the privilege holder] must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice." *Chevron Texaco Corp.*, 241 F. Supp. 2d at 1076 (citing *In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984). This requires a showing "that the 'primary purpose' of the communication was securing legal advice." *Id.*

Because it is not evident that the redactions on the pages with the bates numbers cited above contain legal, as opposed to business, advice from in-house counsel, Equifax has failed to satisfy its burden of demonstrating that the communications are privileged.

3. Communications Sent to Equifax Group Mailboxes

Plaintiff also challenges Equifax's assertion of the privilege over emails Equifax employee Doria Langenkamp sent to two client services group mailboxes. ECF No. 203 at 10. He argues that there is no indication that the emails were sent for the purpose of exchanging legal advice or that Ms. Langenkamp sent the communications within the scope of her corporate duties. *Id.*

The nine documents in this category are from two separate email chains, as well as email attachments from one of the chains. Document 1[12] is a series of emails that were produced, but with two redactions. Both redactions contain the same legal opinion from Shiriki Cavitt, in-house counsel for Equifax, regarding a contract. Similarly, the communications in the other email chain, which are contained in documents 2-6, are between non-legal employees and attorney Shiriki Cavitt relating to contracts. Thus, the communications were made for the purpose of facilitating legal advice.

Equifax, however, has failed to demonstrate that three email attachments related to the second email chain—documents 2A, 2B, and 2C—contain privileged information. The three attachments appear to be general forms utilized by Equifax employees and do not relate to legal

---

[12] All documents discussed in this section are identified by the number assigned by Equifax's Binder B Index Privilege Log.

13

advice. Although these documents were sent in relation to privileged emails, Equifax is required to show that the information in each email attachment is protected. *See AT&T*, 2003 WL 21212614 at *4 ("An attachment must qualify on its own for attorney-client privilege and 'must be listed as a separate document on the privilege log.'") (quoting *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999)). As Equifax has failed to make such a showing, these email attachments must be produced.

As for the emails that are privileged, plaintiff further argues that Equifax has waived the privilege because all Equifax employee in the Client Services Department had access to the emails. ECF No. 203 at 11. With its *in camera* submission, Equifax included the declaration of Jessica Spurlock, a member of Equifax's in-house legal staff. Ms. Spurlock states that, with the exception of the IT department, only five members of the Client Services Department had access to the "Client Services – Account Setup" mailbox, while only four member of the department had access to the "Client Services – Contract Management" mailbox. Spurlock Decl. ¶¶ 6-7. The court accepts these representations and finds no basis for concluding that Equifax widely disseminated these emails and thereby waived their privileged status.

### 4. Communications Without a Recipient

Equifax's May privilege log identifies several withheld documents that did not have a recipient. *See* ECF No. 203-2. Plaintiff argues that because the documents were not sent to another individual, Equifax cannot establish that information in these documents was conveyed for the purpose of giving or obtaining legal advice. ECF No. 203 at 12.

Equifax's *in camera* submission reflects that it has withdrawn its claim of privilege for several of the withheld documents, with Equifax now claiming that only nine documents[13] within this category contain protected information.[14] Documents 1, 2, 3, 3A, 4 and 4A are all related.

/////

---

[13] Unless otherwise specified, all documents discussed in this section are identified by the number assigned by Equifax's Binder C Index Privilege Log.

[14] Specifically, Equifax has withdrawn its claim of privilege for documents 5A-5L and 6A-6G.

14

Documents 1 and 2 are identical. They contain a draft email prepared by Equifax employee Oliver Markham Healey, as well as an email Mr. Healey sent to Jason Esteves, in-house counsel for Equifax.[15] Documents 3 and 4, which are identical, also contain the same email Mr. Healey sent Mr. Esteves, but without the draft email found in documents 1 and 2. The email Mr. Healey sent to in-house counsel was sent for the purpose of obtaining legal advice, and was related to the same information contained in his draft email. Accordingly, Mr. Healey's email to counsel, as well as his draft email, are covered by the privilege. *Oracle America, Inc. v. Google, Inc.*, 2011 WL 3794892, *2 (N.D. Cal. Aug. 2011) ("The privilege extends to electronic versions and preliminary drafts of communicated documents . . . .") (citing *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 139-40 (E.D. Mich. 2009)); *cf. Chevron Texaco Corp.*, 241 F. Supp. 1065, 1077 (N.D. Cal. 2002) ("Materials, transmitted between nonlawyers, that reflect mattes about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer—notes which could serve as an agenda or set of reminders about things to ask or tell counsel. It would undermine the purpose of the attorney-client privilege not to extend protection to such notes. Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected.").

    Each of these documents, however, also include an email from defendant John McGinley. Since Mr. McGinley is not an Equifax employee, his communications are not covered by the privilege. In the same vein, documents 3A and 4A are both copies of a letter addressed to Mr. McGinley, which he subsequently shared with Equifax. Consequently, these documents also fall outside the privilege.

/////

---

[15] Plaintiff notes that Equifax's privilege log does not identify a recipient for any of these documents, which is inconsistent with Mr. Healey's statement that he sent an email to in-house counsel. It appears that the privilege log's description of these documents was based solely on the email appearing at the top of each document's first page. Documents 1, 2, 3, and 4 each begin with a draft email that only identifies the intended recipient, Jason Esteves. Thus, the description Equifax provided in its privilege log fails to accurately describe these documents. This has understandably led to plaintiff's counsel's confusion and frustration over Equifax's assertion that these documents are privileged.

The remaining documents in this category—documents 5, 6 and 7—were produced to plaintiff with redactions. These documents, which are substantially similar in form to documents 62-68 in Volume A (*see supra*), are comprised of approximately 2,400 pages of spreadsheets containing over 200 redactions. A thorough review of these documents reflects that many of the redacted statements pertain to the giving or receiving of legal advice. However, as was the case with the redactions in documents 62-68 of Volume A, it is not apparent from the record that all of the redacted communications were made in relation to the rendering or obtaining of legal advice. For redactions falling into this latter group, Equifax again fails to provide a sufficient explanation for contention that each redaction is privileged. Instead, Equifax repeats nearly verbatim the same vague explanation for why it believes the redactions to documents 62-68 of Volume A (*supra*) are protected from disclosure: the redacted statements "memorialize either prior communications between Equifax employees and Equifax in-house attorneys regarding compliance with federal or state laws, the intent to engage in such attorney-client communications, or both." Spurlock Decl. ¶ 13. Again, this explanation is unhelpful given that many of the withheld statements do not appear to be exchanged with counsel and contain shorthand and/or acronyms not commonly used by the general public. As for the communications reflecting involvement of in-house counsel, many fail to reveal whether counsel is acting in a legal or business capacity.

To address each redaction separately in this order is simply not practical and would waste scarce judicial resources. The court, however, has performed the onerous task of carefully reviewing each redaction, and finds that Equifax has failed to meet its burden of demonstrating that redactions at the pages identified by the following bates numbers contain privileged information: EIS-BRUNO-453970, 453987 (both redactions), 453990 (both redactions), 454080 (rows 51, 53, and 54), 454091 (rows 32, 34, and 35), 454108, 454488 (rows 237-249 and 252-263), 454492, 454493, 454501 (row 402), 454508, 454527, 455631, 455649, 455655, 455664 (rows 74-75), 455762, 456169, 456170, 456180 (row 402), 456189, 456190, 456494 (both redactions), 456506 (both redactions), 457034 (row 402), and 457189. Accordingly, these pages must be produced without these redactions.

### 5. Communications Between Equifax Employees and Cauley Sutton, John McGinley, Robert McGinley, and David Baily

The final category consists of seven documents containing communications between Equifax employees and third-parties Cauley Sutton, John McGinley, Robert McGinley, and David Baily.[16] Equifax contends that the communications with these individuals are privileged under the common interest doctrine. ECF No. 203 at 24-26.

The joint defense doctrine, also referred to as the common interest doctrine, "is 'an extension of the attorney-client privilege,'" *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000)), that provides an exception to the general rule that the disclosure of privileged information to a third party destroys the privilege, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). The doctrine is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d at 1129; *Gonzalez*, 669 F.3d at 978 ("'[T]he rationale for the joint defense rule [is that] persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.'").

"The common interest privilege . . . applies where (1) the communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Nidec Corp.*, 249 F.R.D. at 578 (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)). The parties "need not have identical interest and may even have some adverse motives, but . . ., at a minimum, [the parties] need to be engaged in maintaining substantially the same cause on behalf of [the] other parties . . . ." *Gonzalez*, 669 F.3d at 980. "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *Pac. Pictures Corp.*, 679 F.3d at 1129. "Instead, the parties must make the

/////

---

[16] All documents addressed in this section are identified by the number assigned by Equifax's Binder D Index Privilege Log.

17

communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Id*.

Document 1-5 are emails from the same email chain that were produced with redactions. Documents 1 is an email from Equifax employee Lance Rubeck to Datamyx employee Cauley Sutton. That email included prior email exchanges between Equifax employees, which are found in documents 2-5. Equifax produced these emails but redacted the entire communication between Mr. Rubeck and Mr. Sutton, as well as earlier statements made by another Equifax employee to Mr. Rubeck. Equifax claims that the redacted communications are covered by the common interest doctrine because Equifax and Datamyx share a common legal interest. ECF No. 203 at 24. Equifax explains that both it and Datamyx, who was responsible for providing Equifax data to Geneva Financial, had a shared interest in complying with the FCRA in providing data to Geneva Financial. *Id*. In his declaration, Mr. Rubeck further explains that the withheld documents contain the "ongoing legal analysis being conducted by Mr. Sperry (Equifax's in-house counsel) to assess the state and/or federal lawcompliance [sic] implications of the activity attributed to Geneva." Rubeck Decl.¶ 7. Mr. Rubeck further states that both Equifax and its processing agent Datamyx "needed to know the status and results of attorney Sperry's legal analysis concerning Geneva's activities, and whether they were acceptable from a state and/or federal law compliance perspective." *Id*. ¶ 8.

While there can be no doubt that both Equifax and Datamyx had an interest in complying with the FCRA—an interest shared by virtually all companies that deal in the exchange of credit information—that shared interest is insufficient to afford protection to these parties' communications under the common interest doctrine. *See In re Fresh and Process Potatoes Antitrust Litigation*, 2014 WL 2435581, at *4 (D. Id. May 30, 2014) ("The attorney-client privilege does not extend to communications about a joint business strategy between or among different entities, even if the communications happen to include a concern about potential litigation."); *FSP Stallion 1, LLC v. Luce*, No. 2:08-cv-01155-PMP-PAL, 2010 WL 3895914, at * 21 (D. Nev. Sept. 30, 2010) ("[T]he common interest doctrine does not apply simply because the parties are interested in developing a business deal that complies with the law, and a common

18

goal to avoid litigation. A desire to comply with applicable laws and to avoid litigation does not transform their common interest and enterprise into a legal, as opposed to a commercial, matter.").

Additionally, Equifax has not shown that the redacted statements were made to facilitate communication between the two companies' legal departments. As explained by the Ninth Circuit, the common interest privilege is "designed to allow *attorneys* for different clients . . . to communicate with each other." *Pac. Pictures Corp.*, 679 F.3d at 1129 (emphasis added). There is nothing before the court suggesting Equifax's in-house counsel directed the company's employees to relate the redacted communications to Dataymx's counsel. Nor is there any indication Datamyx ever shared the information with its attorney. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS, 2015 WL 11117150, at *2 (E.D. Wash. June 1, 2015) (for the common interest privilege to apply "[t]he communications, however, must be shared by attorneys for the separate parties").

Indeed, Equifax has not even shown that Datamyx had legal representation at the time the communications were disclosed. That alone forecloses protection under the common interest doctrine. *See Regents of University of Cal. V. Affymetrix, Inc.*, No. 17-cv-1394-H-NLS, 2018 WL 4896066, *3 (S.D. Cal. Oct. 9, 2018) (observing that district courts have routinely "held that the common interest 'privilege only applies when clients are represented by separate counsel.'") (quoting *Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC*, No. 3:16-cv-438-PK, 2017 WL 6329716, at *3 (D. Or. July 7, 2017), *objections overruled sub nom. Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC*, No. 3:16-cv-00438-PK, 2017 WL 6328150 (D. Or. Dec. 11, 2017); *see also, e.g., Swortwood v. Tenedora de Empresas, S.A. de C.V.*, No. 13cv362-BTM (BLM), 2014 WL 895456, at *4 (S.D. Cal. Mar. 6, 2014) ("Since Mr. Diez Barroso was not individually represented by counsel, Defendant cannot establish the applicability of the common interest doctrine."); *Finisar Corp. v. U.S. Bank Tr. Nat. Ass'n*, No. C 07-04052 JF (PVT), 2008 WL 2622864, at *4 (N.D. Cal. June 30, 2008) ("'Under the strict confines of the common interest doctrine, the lack of representation for the remaining parties vitiates any claim to a privilege.'" (quoting *Cavallaro v. United States*, 153 F. Supp. 2d 52, 61 (D. Mass. 2001))); *Carl Zeiss Vision*

*Int'l Gmbh v. Signet Armorlite Inc.*, No. CIV 07CV-0894DMS POR, 2009 WL 4642388, at *7 (S.D. Cal. Dec. 1, 2009); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007) (expressly holding that the common law interest "privilege only applies when clients are represented by separate counsel."); Restatement (3d) of the Law Governing Lawyers § 76(1) cmt. d (2000) ("A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement . . . .").

Likewise, Equifax has failed to show that the common interest doctrine applies to the two remaining documents in this category. Documents 6 and 7 include emails containing in-house attorney Doug Sperry's legal advice related to his review of a proposed mailer. *See supra*, Section II(D)(2). Both documents reflect that Mr. Healey forwarded the legal advice provided by Mr. Sperry to David Bailey, an employee of third-party Decisionlinks. Equifax explains that Decisionlink was functioning as Equifax's processing agent for Geneva, which was making firm offers of credit to consumers. Accordingly, Equifax contends that "[b]oth companies—Equifax and its processing agent Decisionlinks—needed to know the status and results of attorney Sperry's legal analysis concerning Geneva's activities, and whether they were acceptable from a FCRA perspective." Markham Decl. ¶ 10.

Again, Equifax has merely shown that both entities had a shared interest in complying with the law. As discussed above, such a showing is insufficient for application of the common interest doctrine. Equifax also again fails to show that the redacted statements were made at the behest of the entities' counsel or for the purposes of allowing communication between their attorneys. Accordingly, Equifax must produce documents 1-7 without redactions.

III. Conclusion

Accordingly, it is hereby ORDERED that plaintiff's motion to compel (ECF No. 196) is granted in part and denied in part, as provided herein. Within 7 days of this order, Equifax shall produce the withheld documents in accordance with this order.

DATED: February 14, 2019.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE